**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ARDMOR, INC.,                                Case No. __ - _____ - _____

                    Plaintiff,

                                        **JURY TRIAL DEMANDED**

          v.

ARDMOR CONSTRUCTION LLC,

                    Defendant.

**COMPLAINT FOR TRADEMARK INFRINGEMENT**

Plaintiff, ARDMOR, INC., sues Defendant, ARDMOR CONSTRUCTION LLC, for trademark infringement under the Lanham Trademark Act, cancelation of Defendant's U.S. trademark registration, and related claims for unfair competition and alleges:

**Parties**

1.     Plaintiff, ARDMOR, INC., is a Pennsylvania corporation having its principal place of business in Willow Grove, Montgomery County, Pennsylvania.

2.     Defendant, ARDMOR CONSTRUCTION LLC, is a Minnesota limited liability company having its principal place of business in St. Louis Park, Hennepin County, Minnesota.

**Nature of Action and Jurisdiction**

3.     This is an action for federal false designation of origin and unfair competition under Section 43 of the Lanham Trademark Act, 15 U.S.C. § 1125(a), cancelation of a U.S. trademark registration under Section 37 of the Lanham Trademark Act, 15 U.S.C. § 1119, and other related claims under Minnesota law.

1

4.     This is also an action for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, including to declare Plaintiff's exclusive right in the U.S. to use ARDMOR in connection with the installation, maintenance, replacement, and repair of windows and doors.

5.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338 because of claims arising under the Lanham Act (15 U.S.C. §§ 1051, *et. seq*.), and pendant jurisdiction over the remaining claims under 28 U.S.C. § 1367.

6.     This Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.     Defendant is subject to personal jurisdiction in Minnesota because it resides and does business in this District and because Defendant is committing tortious acts within this State including false designation of origin and unfair competition likely to cause consumer confusion and causing Plaintiff to suffer harm.  The events giving rise to this Complaint have occurred in this State and have effects in this State and District.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in and a substantial part of the events giving rise to the acts complained of herein occurred in this District.

## FACTS COMMON TO ALL COUNTS

**A.    Plaintiff's ARDMOR Trademark, Domains, Website, and Services**

9.      Since at least as early as March 2015, Plaintiff has been continuously using ARDMOR and ARDMOR Windows & Doors ("Plaintiff's Ardmor Marks")" in interstate commerce for installation, maintenance, replacement, and repair of doors and windows ("Plaintiff's Windows & Doors Services").

10.     ARDMOR is an inherently distinctive fanciful mark uniquely created in 2015 by Plaintiff's founding principals, including its President, Mr. Andrii Melnyk.

11.     Plaintiff started out in Illinois and conducted its first sales of ARDMOR Windows & Doors Services in March 2015. *See* Invoice attached hereto as **Exhibit 1**.

12.     A few months later, Plaintiff provided its first sales of ARDMOR Windows & Doors Services in Pennsylvania, Delaware, New Jersey, and New York. See 2015 Invoices attached as **Exhibits 2–5**.

13.     Since then, Plaintiff has exclusively owned and robustly advertised and marketed its Windows & Doors Services using its ardmor.inc@gmail.com email address and ardmorinc.com, ardmor.com, ardmorwindows.com, and ardmorepair.com domains (the "Ardmor Domains").

14.      The Ardmor Domains links to Plaintiff's immersive, interactive website, which prominently and repeatedly features "Ardmor Windows & Doors," directly signifying to consumers and the world the nature of Plaintiff's business with which it uses its distinctive ARDMOR Marks (the "Ardmor Website"), depicted below:





15.    Over the years, Plaintiff has invested substantial resources advertising and promoting its ARDMOR Marks and Windows & Doors Services and has expended great

efforts to ensure that its products and services meet high standards of quality, safety, and performance.

16.    Plaintiff has earned the trust of numerous, reputable, national (and even international) suppliers of windows and doors, including, for example, Marvin, which invited Plaintiff to become an Authorized Replacement Contractor in 2017, Andersen Windows, a company with over $4 billion in annual revenues, which, in December 2018, certified Plaintiff as both a trusted Installer and Service Provider, and Oknoplast, an international manufacturer of European tilt-and-turn windows.

17.    In fact, Plaintiff has become so well known for its coveted association with Andersen that, in at least one national organic Google search result, its Ardmor Domains and Website appears on the first page, just two results below Andersen's official website. See **Exhibit 6** hereto.

18.    Since 2015, Plaintiff has conducted robust Google advertising campaigns, spending upwards of a million dollars, to date, on Google AdWords, presenting its ARDMOR brand to many, many consumers nationwide.

19.    This exposure reflects Plaintiff's substantial national reach, and although it started out in Illinois and focuses on the PA-NJ-NY-DE area, Plaintiff routinely receives customer inquiries and has secured business from consumers around the U.S., including many business inquiries in Minnesota, Iowa, and Wisconsin, where Defendant resides and operates.

20.    More specifically, since 2015, Plaintiff has received over 2,289 genuine, unique business leads from consumers residing outside of the PA-NJ-NY-DE area,

including 146 of which derived from consumers in Minnesota, Iowa, and Wisconsin, where Defendant operates.

21.    As a result, Plaintiff has developed goodwill, public recognition, and strong rights in its ARDMOR Marks, which consumers nationally have come to know as an indicator of origin and symbol of trust, quality, and value.

22.    Plaintiff's outstanding reputation is reflected, in part, by its 4.9 Star Google Review Ratings based on 1530+ reviews:



23.    Plaintiff's brand recognition and excellent reputation is also apparent from its significant, long-term consumer review histories across Yelp, HomeAdvisor, Angie's List, and Tumbtack.

24.    Inherently distinctive, Plaintiff's ARDMOR Marks serve to identify and indicate the source of Plaintiff's services to the consuming public, and to distinguish its services from those of others.

25.    Additionally, as a result of Plaintiff's frequent and widespread usage and promotion of its ARDMOR Marks, and substantial revenues derived from the sale of its Windows & Doors Services, the Marks have become distinctive to designate Plaintiff's services, to distinguish Plaintiff's services from those of others, and to distinguish the source or origin of Plaintiff's services.

**B.    Defendant's Subsequent and Junior Use of "Ardmor"**

26.    Defendant, which goes by the name "Ardmor Construction," holds itself out on its ardmorconstruction.com website as a roofing and siding specialist:



27.     Defendant purports to provide its "specialized" roofing and siding services in Minnesota, Wisconsin, and Iowa, as reflected below:



28.     Originally formed as "Selvik Construction," Defendant did not begin using "Ardmor" as a business designation ("Defendant's Ardmor Designation") until September 2017, or some 2+ years after Plaintiff began using its ARDMOR Marks for Windows & Doors.

29.     While Defendant claims to "specialize" in roofing and siding, it has also expanded into installing windows:



30.     It is unclear when Defendant began using its Ardmor Designation for windows because Defendant's advertising of its services has been erratic.

31.     For example, in versions of Defendant's website before 2020, Defendant actively advertised and promoted only its roofing and siding services:[1]



---

[1] Defendant's website was captured by web archives (the "Wayback Machine") a few times before 2020 and appeared as pictured.



32.    And while Defendant appears to have begun marketing window installation and repair services in or around 2020–2021, as late as October 2022 and April 2024, Defendant often promoted, including on Instagram, just its roofing, siding, and gutters services:





33.    One thing is perfectly clear, however: Defendant did not begin using its Ardmor Designation for windows until at least 5–6 years after Plaintiff began using its ARDMOR Marks for Windows & Doors Services—with, as explained above, national reach.

34.    Whenever Defendant began its junior use of "Ardmor," its infringing use has since become widespread.

35.    In addition to its website, Defendant advertises its Ardmor Designation in connection with windows on various media, including Instagram, Facebook, YouTube, Signage, and Door Hangars, including hashtags, some of which is reflected below:







13

C.    **Defendant's Knowledge of Plaintiff and Misappropriation of Plaintiff's ARDMOR Mark.**

36.    Google searches for "Ardmor" in various regions yield either Plaintiff's ardmor.com website, alone, or both Plaintiff's site and Defendant's ardmorconstruction.com website, as the only two results in the construction industry: *See, e.g.*, Google Search (FL), attached as **Exhibit 7**, Google Search (PA), attached as **Exhibit 8**, and Google Search (MN), attached as **Exhibit 9**.

37.    Similarly, YouTube searches for "Ardmor" yield construction-related videos only for Plaintiff and Defendant. *See, e.g.*, YouTube (FL), attached as **Exhibit 10**, YouTube (PA), attached as **Exhibit 11**, and YouTube (MN), attached as **Exhibit 12**.

38.    As mentioned above, Plaintiff started out in nearby Illinois in March 2015 and has provided Windows & Doors Services under ARDMOR to consumers around the country since then.

39.    The only seven trademarks ever applied for and/or registered on the U.S. Principal Trademark Register comprised of "Ardmor" are those filed by Plaintiff and Defendant (and its owner, Sarah Ahrendt, individually). *See* USPTO website attached as **Exhibit 13**.

40.    Defendant started out as Selvik Construction but then changed its name to "Ardmor Construction."

41.    And at the time Defendant adopted "Ardmor Construction," Plaintiff had been robustly promoting its ARDMOR Marks such that anyone searching "Ardmor" online encountered Plaintiff's ARDMOR Domains and landed on Plaintiff's ARDMOR Website.

42.    Thus, Defendant knew, or, based at least on this overwhelming evidence, must have known, about Plaintiff's ARDMOR Marks, Domains, and Website, and that it was providing Windows & Doors Services under its ARDMOR Marks, when Defendant adopted its Ardmor Designation.

**D.    Defendant's Fraudulent Trademark Application**

43.    On October 29, 2017, Defendant filed U.S. Trademark Application Serial No. 87/663,898 (the "'898 Application") for "Ardmor" in International Class 037 for "Roofing services; Building construction services; Installing siding." See '898 Application, attached hereto as **Exhibit 14**.

44.    The '898 Application matured into U.S. Registration No. 5,664,330 for "Ardmor" for "roofing services," only, issued on January 29, 2019 (the "'330 Registration").

45.    At the time Defendant filed the '898 Application, it declared under oath that "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

46.    As explained above, Defendant knew full well at the time it adopted its Ardmor Designation that Plaintiff was already using its ARDMOR Marks for Windows & Doors in multiple states and thus had "the right to use the Mark in commerce."

15

47.     Therefore, Defendant's declaration under oath to the USPTO was knowingly false and the '330 Registration should be canceled under Section 37 of the Lanham Act, 15 U.S.C. § 1119.[2]

**E.     Defendant's Increased Infringement Activity After Learning of Plaintiff's U.S. Trademark Applications.**

48.     In July 2024, while pulling up his company's website on his phone at a customer's home, Mr. Melnyk came across Defendant and its Ardmor Designation.

49.     A few days later, Plaintiff filed U.S. Trademark Application Serial Nos. 98/649,507 for ARDMOR and 98/649,506 for ARDMOR WINDOWS & DOORS, both in International Class 037 for "Installation, maintenance and repair of doors and windows" ("Plaintiff's ARDMOR Trademark Applications").

50.     Because of Defendant's subsequent adoption and usurpation of Plaintiff's ARDMOR Mark, Defendant's '330 Registration was cited by the USPTO trademark examiner as a basis to deny registration of Plaintiff's ARDMOR Trademark Applications.

51.     Thereafter, Plaintiff engaged Marksmen, a nationally renowned trademark and brand protection research and investigative services provider, to investigate Defendant's use of its Ardmor Designation.

52.     As part of its investigation, Marksmen communicated with Defendant and such communications referenced Plaintiff.

---

[2] Defendant repeated its false declaration to the USTPO in March 2022 when it filed a trademark application for "Ardmor Construction," which it eventually abandoned.

53.    Not coincidentally, therefore, in the days immediately following the USPTO's citation of Defendant's '330 Registration as a basis to deny registration of Plaintiff's ARDMOR and ARDMOR WINDOWS & DOORS Marks, Defendant ramped up promotion of its Ardmor Designation in connection with window installation and replacement services.

54.    For example, on February 9, 2025, just four days after Plaintiff received an Office Action from the USPTO citing the '330 Registration, Defendant posted a video to its Instagram Page in which it promotes, seemingly for the first time on social media, its services related to window installation and replacement.

55.    Then, two days later, on February 11, 2025, Defendant "announced" its "new series all about windows:"



56.    At the same time, and apparently as part of this "new series all about windows," Defendant posted what appears to be its first ever YouTube video promoting its services for windows, "When to replace your windows:"



57.     Just a few days later, Defendant posted its second-ever video to YouTube promoting window repair and replacement services, "Is your window making your home noisy:"



58.    And on March 14, 2025, just over a month after its '330 Registration was cited against Plaintiff's ARDMOR Trademark Applications, Defendant posted a third-ever video concerning windows, "How to Install a Window:"



59.    Defendant's first-ever social media promotional blitz for windows-related services, *eight years* after first adopting the Ardmor Designation but *less than a week* after its '330 Registration was cited against Plaintiff's Trademark Applications, cannot be, and is not, a coincidence.

60.    Indeed, emboldened by the USPTO's refusal to register Plaintiff's ARDMOR Marks, Defendant, with impunity, began heavily promoting its Ardmor Designation for window installation and replacement services in an attempt to deliberately trade off Plaintiff's reputation and goodwill, and that symbolized by Plaintiff's ARDMOR Marks.

**F.**    **Defendant is Creating Confusion and Harming Plaintiff's Business**

61.    Defendant's window installation videos advocate needlessly replacing windows.

62.    For example, in its "When to Replace Your Windows" video posted to YouTube, referenced above, Defendant erroneously promotes full replacement of the entire window unit rather than simply replacing the foggy glass.

63.    Windows with condensation between the panes, i.e., foggy glass, do not typically have to be replaced completely, rather, it is common to replace only the glass.

64.    Additionally, in cases where windows may stick, Defendant promotes fully replacing entire window units, but these, too, can be repaired instead of engaging in costly replacement.

65.    Defendant's misleading videos are inconsistent with Plaintiff's mantra: "repair before replace."

66.    Thus, given the likelihood of confusion resulting from Defendant's foray into windows and recently hyped "new series all about windows" promoted by nationally viewable YouTube videos, consumers from around the U.S. will be deterred from contacting Plaintiff to repair foggy glass.

67.    Additionally, Defendant's recommendation, which is not consistent with industry standards, will hurt Plaintiff's reputation.

**G.   Presuit Efforts to Resolve Dispute**

68.    On December 2, 2025, before filing this lawsuit, Plaintiff contacted Defendant in an attempt to amicably resolve this dispute.

69.    However, Defendant, notwithstanding Plaintiff's superior and senior use of its ARDMOR Marks for Windows & Doors Services, is unwilling to cease and desist from using its Ardmor Designation for windows.

70.    Among other things, Defendant contends that Plaintiff uses ARDMOR only in the PA-DE-NJ-NY area, and that Plaintiff is not licensed to install windows in Minnesota, Iowa, and Wisconsin where Defendant operates.

71.    But as explained herein, regardless of its licensing, Plaintiff started out in Illinois and, due to its robust and longstanding advertising and use, its ARDMOR Marks for Windows & Doors Services have achieved national reach and recognition.[3]

**H.   Damage and Harm Defendant is Inflicting on Plaintiff**

72.    In an effort to trade on Plaintiff's excellent reputation and valuable goodwill, Defendant has set out on a deliberate course of conduct to deceive consumers into believing that they or their window installation and replacement services are connected, associated, or affiliated with Plaintiff.

73.    Defendant's use of its Ardmor Designation for windows-related services enables Defendant to trade on and receive the benefit and goodwill built up at great labor

---

[3] Plaintiff's licensing is irrelevant to the scope of its use as Plaintiff's services under ARDMOR may be furnished by subcontractor agents.

and expense over many years by Plaintiff, and to gain acceptance for Defendant's business not solely on Defendant's own merits, but on the reputation and goodwill of Plaintiff and its ARDMOR Marks and services.

74.     Defendant's use of its Ardmor Designation for windows-related services enables Defendant to palm off its services on the unsuspecting public as those meeting Plaintiff's quality control standards.

75.     Defendant's use of its Ardmor Designation removes from Plaintiff the ability to control the nature and quality of services provided under the ARDMOR Marks and places the valuable reputation and goodwill of Plaintiff in the hands of Defendant, over whom Plaintiff has no control.

76.     As a proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered and will continue to suffer great damage to its trademarks, business, goodwill, reputation, and profits.

77.     Plaintiff has no adequate remedy at law for the infringement of its trademarks alleged herein.  Unless Defendant is permanently enjoined by this Court, Plaintiff will continue to be damaged by Defendant's acts of infringement, false designation of origin and unfair competition, and will suffer irreparable harm.

**I.     Willful Nature of Defendant's Wrongful Acts**

78.     Defendant's acts of infringement, false designation of origin, and unfair competition complained of herein have been malicious, fraudulent, deliberate, willful,

23

intentional, and in bad faith, with full knowledge and conscious disregard of Plaintiff's rights.

79.     In view of the egregious nature of Defendant's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT I
## False Designation of Origin (15 U.S.C. § 1125)

80.     Plaintiff reasserts paragraphs 1–79 as though set forth in full herein.

81.     Defendant, pursuant to 15 U.S.C. § 1125(a)(1)(A), on or in connection with services, uses in commerce words, terms, names, symbols, or devices, or combinations thereof, or false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of their goods or commercial activities by Plaintiff.

82.     Defendant, pursuant to 15 U.S.C. § 1125(a)(1)(B), on or in connection with services, uses in commerce words, terms, names, symbols, or devices, or combinations thereof, or false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of its services or commercial activities.

83.     The acts of Defendant complained of herein constitute false designations of origin, false or misleading descriptions or representations of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT II
## Deceptive Trade Practices under Minn. Stat. § 325D.44

84.     Plaintiff reasserts paragraphs 1–79 as though set forth in full herein.

85.     Defendant, in the course of its business, vocation, or occupation, is: (1) passing off its services as those of Plaintiff; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its services; (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Plaintiff; (4) representing that its services have sponsorship or approval that it does not have or that Defendant has a sponsorship, approval, status, affiliation, or connection that it does not have; and/or (5) engaging in unfair methods of competition, or unfair or unconscionable acts or practices.

86.     The acts of Defendant complained of herein constitute deceptive trade practices under Minn. Stat. § 325D.44.

## COUNT III
## Unjust Enrichment

87.     Plaintiff reasserts paragraphs 1–79 as though set forth in full herein.

88.     As set forth in detail above, Plaintiff has long-established rights in its ARDMOR Marks and has made substantial investments in establishing and promoting

those Marks through investment of time, money, and effort in promoting goods offered under the Marks.

89.    Defendant's use of Plaintiff's Marks enables Defendant to trade on and receive the benefit of goodwill built up at great labor and expense over many years by Plaintiff, and to gain acceptance for its business and services not solely on its own merits, but on the reputation and goodwill of Plaintiff and its services.

90.    Defendant accepted and used the benefits conferred upon them by Plaintiff and has been unjustly enriched at Plaintiff's expense by its use of the ARDMOR Marks.

91.    Inequities have resulted from Defendant's unauthorized use of the ARDMOR Marks.

92.    The acts of Defendant complained of herein constitute unjust enrichment of Defendant at Plaintiff's expense in violation of the common law of Minnesota.

**COUNT IV**
**Cancelation of '330 Trademark Registration For Fraud on the USPTO**

93.    Plaintiff reasserts paragraphs 1–79 as though set forth in full herein.

94.    Defendant knew at the time it submitted its application to register its Ardmor Designation that Plaintiff was using its ARDMOR Marks in commerce.

95.    Yet at the time Defendant filed the '898 Application, it declared under oath that "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection

with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

96.     Based on Defendant's statement under oath, the USPTO registered Defendant's Ardmor Designation, which has greatly benefited Defendant at the expense of Plaintiff.

97.     Defendant's sworn statement made in the application to register the Ardmor Designation constitutes fraud in the procurement of its trademark registration.

98.     Defendant committed fraud before the USPTO by knowingly and willfully making a false and/or fraudulent declaration or representation to the USPTO as to the right of others to use the mark.

99.     Defendant made the statement knowing that the Examining Attorney would be relying on such false statement in accepting the application for registration.

100.    Defendant has benefitted as a result of the imprimatur of validity in the public eye arising from the registration

101.    As a result, the '330 Registration should be canceled under 15 U.S.C. § 1119.

## COUNT V
## Tortious Interference with Prospective Economic Advantage

102.    Plaintiff reasserts paragraphs 1–79 as though set forth in full herein.

103.    Plaintiff had an expectation of economic advantage because it conducts business nationally and has extensive national reach, including at least 146 business leads derived from consumers in Minnesota, Iowa, and Wisconsin, where Defendant operates.

27

104.    Because of, in part, Plaintiff's extensive national reach, Defendant knew or should have known Plaintiff had prospective business relationships in Minnesota, Iowa, and Wisconsin.

105.    Defendant knew or should have known Plaintiff's business relationships with consumers in Minnesota, Iowa, and Wisconsin provided the expectation of future economic advantage.

106.    Defendant intentionally interfered with Plaintiff's reasonable expectation of economic advantage, including by wrongfully advancing its new windows series not coincidentally at or about the time its '330 Registration was cited against Plaintiff's ARDMOR Trademark Applications.

107.    In the absence of Defendant's interference, it was reasonably probable that Plaintiff would have realized its economic advantage given its continuing national reach with a significant number of leads in Minnesota, Iowa, and Wisconsin.

108.    As a direct and proximate result of Defendant's tortious interference, Plaintiff has been damaged.

109.    Plaintiff will move this Court in accordance with Minn. Stat. § 549.20 to apply to claims for punitive damages, as determined by a jury.

**Prayer for Relief**

WHEREFORE, as to all claims in this Complaint, Plaintiff demands the following:

a)    A Final Judgment finding that Defendant has:

    i)    engaged in unfair competition, including trademark infringement, false designation of origin, or false or misleading descriptions or representations of fact under 15 U.S.C. § 1125(a);

    ii)    engaged in deceptive trade practices under Minn. Stat. § 325D.44 and the common law of Minnesota;

    iii)    been unjustly enriched at Plaintiff's expense under Minnesota law;

    iv)    engaged in fraud on the USPTO in connection with the '330 Registration; and

    v)    tortiously interfered with Plaintiff's prospective economic advantage under Minnesota law;

b)    a Final Judgment finding and declaring Plaintiff to be the senior user of the ARDMOR Marks with priority rights over Defendant;

c)    cancelation of the '330 Registration under 15 U.S.C. § 1119;

d)    a permanent injunction under 15 U.S.C. § 1116 and Minnesota law prohibiting and restraining Defendant, Defendant's agents, servants, employees, attorneys, related companies, and all those persons in active concert or participation with them, from infringing the ARDMOR Marks, including using any element thereof, and any other mark or designation confusingly similar thereto, for windows and doors related services;

e)    an injunction permanently enjoining and restraining Defendant, its managers, members, officers, employees, agents, servants, attorneys, successors and assigns, related companies and all those persons in active concert or participation with them, and all of them, from using the Ardmor Designation for windows and doors related services, and from using any other designation or mark, including in search engine optimization and metatags, that contains the ARDMOR Marks or any formative variation thereof, or that is otherwise confusingly similar to the ARDMOR Marks;

f)    an Order requiring Defendant to remove all references to windows and doors related services from its website, social, media, signage, and other advertising and marketing materials;

g)    an Order requiring Defendant to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

h)    an award of compensatory damages and special damages as a result of Defendant's infringement, false designations of origin, false or misleading descriptions or representations of fact, unfair competition, and deceptive trade practices and that said damages be trebled;

i)    disgorgement of Defendant's profits plus actual damages to Plaintiff and costs, increased by an amount equal to three times such damages because of Defendant's willful violations under 15 U.S.C. § 1117(a);

j)      an Order requiring Defendant to file with this Court and to serve upon Plaintiff an accounting to determine Defendant's profits resulting from Defendant's activities, and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of this case or trebled under 15 U.S.C. § 1117(a);

k)      an award of attorneys' fees, costs, and pre- and post-judgment interest under 15 U.S.C. § 1117, and as otherwise permitted under the law;

l)      an award of costs and prejudgment and post-judgment interest; and

m)      such other and further relief as this Honorable Court deems just and proper.

## Jury Demand

Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable of right by a jury.

*Respectfully Submitted,*

**SAPIENTIA LAW GROUP, PLLC**

Dated: December 16, 2025

*/s/ Alexander J. Beeby*
Jonathan A. Strauss (279602)
Alexander J. Beeby (398286)
Sapientia Law Group, PLLC
120 South Sixth Street, Suite 100
Minneapolis, MN  55402
612-756-7100
jons@sapientialaw.com
alexb@sapientialaw.com

*Attorneys for Plaintiff Ardmor, Inc.*