**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ardmor, Inc., File No. 25-CV-04658 (JMB/DTS)

Plaintiff,

v. **ORDER**

Ardmor Construction LLC,

Defendant.

---

Alexander J. Beeby and Jonathan A. Strauss, Sapientia Law Group PLLC, Minneapolis, MN; Matthew S. Nelles, Johnson and Martin, P.A., Fort Lauderdale, FL, (*pro hac vice*) for Plaintiff Ardmor, Inc.

Devan V. Padmanabhan and Paul J. Robbennolt, Padmanabhan & Dawson PLLC, Minneapolis, MN, for Defendant Ardmor Construction PLLC.

---

This matter is before the Court on Defendant Ardmor Construction LLC's Motion to Dismiss. (Doc. No. 18.) For the reasons explained below, the Court grants the motion and dismisses this action without prejudice.

**BACKGROUND**

Plaintiff Ardmor, Inc., (Plaintiff) is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Doc. No. 1 [herein after "Compl."] ¶ 1.) Defendant Ardmor Construction, LLC, (Defendant) is a Minnesota limited liability company with its principal place of business in Minnesota. (Compl. ¶ 2.) Since or around March 2015, Plaintiff has continuously used "Ardmor" and "Ardmor Windows & Doors" in interstate commerce for the installation, maintenance, replacement, and repair of doors and windows.

(Compl. ¶ 9.) "Ardmor" is an inherently distinctive fanciful mark. (*Id.* ¶ 10.) While Plaintiff's business started in Illinois, Plaintiff had its first sales of its window and doors services in Pennsylvania, Delaware, New Jersey, and New York. (*Id.* ¶¶ 11–12.) Plaintiff's websites (ardmorinc.com, ardmor.com, ardmorwindows.com, and ardmorrepair.com), link to webpages that repeatedly feature "Ardmor Windows & Doors." (*Id.* ¶¶13–14.)

Over the years, Plaintiff expended significant resources to ensure that its products and services meet high standards of safety and performance, earning the trust of numerous and reputable, national and international, suppliers of windows and doors.[1] (*Id.* ¶¶ 15–16.) Since 2015, Plaintiff has "conducted robust Google advertising campaigns, spending upwards of a million dollars, to date, on Google AdWords, presenting its Ardmor brand to many, many consumers nationwide." (*Id.* ¶ 18.) This exposure "reflects Plaintiff's substantial national reach, and although [Plaintiff] started out in Illinois and focuses on the PA-NJ-NY-DE area, Plaintiff routinely received customer inquiries and has secured business from consumers around the U.S., including many business inquiries in Minnesota, Iowa, and Wisconsin, where Defendant resides and operates." (*Id.* ¶ 19.) Also since 2015, "Plaintiff has received over 2,289 genuine, unique business leads from consumers residing outside of the PA-NJ-NY-DE area, including 146 of which derived from consumers in

---

[1] Indeed, Plaintiff emphasizes that in December 2018, Andersen, a company with over $4 billion dollars in annual revenue, certified Plaintiff as both a trusted Installer and Service Provider, and that Plaintiff has become so well-known for this "coveted" association with Anderson that in "at least one national organic Google search result, its Ardmor Domains and Website appears on the first page, just two results below Andersen's official website." (Compl. ¶¶ 16–17; Doc. No. 1-6.)

Minnesota, Iowa, and Wisconsin where Defendant operates." (*Id.* ¶ 20.) As a result, Plaintiff has developed "goodwill, public recognition, and strong rights in its ARDMOR Marks, which consumers nationally have come to know as an indicator of origin and symbol of trust, quality, and value." (*Id.* ¶ 21.) Plaintiff acknowledges that it is not licensed to install windows in Minnesota, Iowa, and Wisconsin, where Defendant operates but Plaintiff says that "due to its robust and longstanding advertising and use, its Ardmor Marks for Windows & Doors services have achieved national reach and recognition." (*Id.* ¶ 70.)

Defendant holds itself out as a roofing and siding specialist servicing Minnesota, Wisconsin, and Iowa. (*Id.* ¶ 27.) Defendant began using the business designation "Ardmor" in or around September 2017. (*Id.* ¶ 28.) Defendant has also expanded into installing windows, though Plaintiff is unclear as to when Defendant first began offering window services because Plaintiff alleges Defendant's advertising of its services has been "erratic." (*Id.* ¶¶ 29–30.) The closest Plaintiff can say is that Defendant may have begun to market window services in or around 2020–2021. (*Id.* ¶ 32.) This is five to six years after Plaintiff began using "Ardmor" for its windows and doors services with "national reach." (*Id.* ¶ 33.) Plaintiff also alleges that at the time Defendant adopted "Ardmor Construction" Plaintiff had been robustly promoting itself as "Ardmor" and alleges that Defendant "knew, or, based at least on this overwhelming evidence, must have known, about Plaintiff's ARDMOR Marks." (*Id.* ¶¶ 41–42.)

There are seven trademarks that have been applied for and/or registered on the U.S. Principal Trademark Register for "Ardmor," and they have all been filed by either Plaintiff

or Defendant. (*Id.* ¶ 39; Doc. No. 1-13.) On October 29, 2017, Defendant filed U.S. Trademark Application Serial No. 87/663,898 (898 Application) for "Ardmor" in International Class 037 for "[r]oofing services; building construction services; installing siding." (*Id.* ¶ 43; Doc. No. 1-14.) The 898 Application matured into U.S. Registration No. 5,664,330 for "Ardmor" for "roofing services" only, and it issued on January 29, 2019 (330 Registration). (*Id.* ¶ 44.) At the time Defendant filed its 898 Application, it declared under oath that

> [T]o the best of the signatory's knowledge and belief, no other persons, except if applicable concurrent users, have the right to the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

(*Id.* ¶ 45.) Plaintiff alleges that Defendant knew Plaintiff was using the Ardmor Mark at the time Defendant adopted its Ardmor designation, and therefore this declaration was false, and its 330 Registration should be canceled. (*Id.* ¶¶ 46–47.)

In or around July 2024, Plaintiff filed trademark applications for "Ardmor" and "Ardmor Windows & Doors" for the "[i]installation, maintenance, and repair of doors and windows." (*Id.* ¶¶ 48–49.) However, the USPTO denied registration of Plaintiff's "Ardmor" trademark applications, citing Defendant's 330 Registration as a basis for denial. (*Id.* ¶ 50.) In the days immediately following the USPTO's citation of Defendant's 330 Registration as a basis to deny Plaintiff's trademark registrations, Defendant ramped up promotion of its window installation and replacement services. (*Id.* ¶¶ 53–60.) Plaintiff alleges that Defendant has set out on a deliberate course to deceive consumers into

believing that it, or its window installation and replacement services, is connected, associated, or affiliated with Plaintiff. (*Id.* ¶ 72.)

As such, on December 16, 2025, Plaintiff initiated this action asserting the following five claims against Defendant: (1) false designation of origin in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125) (Count I); (2) deceptive trade practices in violation of Minn. Stat. § 325D.44 (Count II); (3) unjust enrichment under Minnesota State law for the false designation of origin violation (Count III); (4) fraud on the United States Patent and Trademark Office (USPTO) pursuant to 15 U.S.C § 1119 justifying cancellation of trademark registration (Count IV); and (5) tortious interference with prospective economic advantage under Minnesota state law (Count V).

**DISCUSSION**

Defendant moves to dismiss Counts I and IV for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), asks the court to decline pendant jurisdiction over Counts II, III, and V, or in the alternative, to also dismiss Counts II, III, and V for failure to state a claim. (*See generally* Doc. No. 18.)

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

Because the Complaint does not include adequate factual allegations, the Court grants Defendant's motion to dismiss for failure to state a claim on all Counts and dismisses the matter without prejudice.

## I. TRADEMARK INFRINGEMENT (COUNT I)

The Complaint does not include sufficient allegations to state a claim of common law trademark infringement.

In order to state a claim for trademark infringement or false designation under the Lanham Act, plaintiffs must allege "(1) ownership of a valid trademark and (2) likelihood of confusion between the owner's mark and a defendant's mark." *Kia Motors Am., Inc. v. Autoworks Distrib.*, No. 06-CV-00156 (DWF/JJG), 2006 WL 2943306, at *2 (D. Minn. Sept. 28, 2006) (citing 15 USC. § 1125(a)(1)(A); *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). Plaintiff does not have a registered "Ardmor" trademark, therefore Plaintiff is asserting ownership over two common law trademarks ("Ardmor" and "Ardmor Windows & Doors"). In order to establish common law ownership of a trademark, [Plaintiff] must prove "(1) that it actually used the [mark] in connection with its [business] and services provided in the relevant geographic areas; and

(2) that the [mark] identified the Plaintiff as the provider of those services in the minds of consumers." *Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1148–49 (D. Minn. 2001) (citing *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 928 (8th Cir. 1967)).[2]

In this case, the allegations do not allege use in the relevant geographic area, as required for common law trademark infringement. At most, the Complaint alleges that Plaintiff received customer inquiries around the United States, including from Minnesota, Wisconsin, and Iowa. (Compl. ¶¶ 18–20.) Business inquiries from the relevant geographic area do not establish use of a trademark, and the allegations directly concerning Plaintiff's use of the trademark center on a geographic market along the East Coast. (Compl. ¶¶ 14 (explaining that Plaintiff's website states that it serves "PA, DE, NJ, NY, and Other States"); 19 (stating that Plaintiff's business is "focuse[d] on the PA-NJ-NY-DE area").)

In addition, general allegations that the trademark has a "national reach" (*see* Doc. No. 23 at 17–18) are insufficient to establish this element of common law trademark infringement, especially absent any allegations that Plaintiff even intends to do business in the relevant geographic area. Questions of market analysis, market penetration, and geographic scope are typically factual questions that warrant discovery. But with no allegations of actual trademark use in Minnesota, Wisconsin, or Iowa, Plaintiff has not sufficiently pleaded ownership of a valid common law trademark.

---

[2] To the extent that Plaintiff argues that it used the "Ardmor" mark first, this allegation does not affect the Court's analysis. "Where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote from one another, the question of prior appropriation is legally insignificant." *Sweetarts*, 380 F.3d at 928 (citing *Hanover Star Milling Company v. Metcalf*, 240 U.S. 403, 415 (1916)).

Finally, the Complaint does not include any allegations to establish that the trademark's "zone of natural expansion" includes a market in Minnesota, Wisconsin, or Iowa. *See* McCarthy on Trademarks and Unfair Competition § 26:20 (5th ed.) (explaining that zone of expansion is a doctrinal alternative to proving actual sales impact or actual reputation of a mark in a contested area, but noting that "[i]n most cases, the courts have rejected this argument on the facts, narrowly defining the senior user's zone of natural expansion"). Courts in this Circuit take a narrow view of natural zone of expansion. *See, e.g.*, *Katz Drug Co. v. Katz*, 188 F.2d 696, 698, (8th Cir. 1951) (concluding that Kansas City, Missouri area drug stores did not have a zone of expansion in St. Louis, Missouri.); *Shoppers Fair of Ark., Inc. v. Sanders Co.*, 328 F.2d 496, 499-501, (8th Cir. 1964) (concluding that Fort Smith, Arkansas, was not within the natural zone of expansion of the plaintiff's nearest discount department store in Tulsa, Oklahoma, 138 miles away); *Middle Child, LLC v. Middle Child Grp., LLC*, No. 24-CV-00854, 2024 WL 4818697, at *3 (D. Nev. Nov. 15, 2024) (dismissing trademark infringement claim where plaintiff argued that Las Vegas fell within its natural zone of expansion but only alleged in its complaint an intent to expand to Texas and California). Accordingly, absent allegations that Plaintiff intends to expand its business into Wisconsin, Minnesota, and Iowa, the Complaint does not state a claim for trademark infringement based on the zone of natural expansion.

Therefore, the Court dismisses Count I of the Complaint without prejudice.[3]

---

[3] Given this decision, the Court need not address Defendant's argument that the *Tea Rose/ Rectanus* doctrine precludes the claims in this case. Nevertheless, the Court observes that the *Tea Rose/ Rectanus* doctrine is an affirmative defense that must be pled as such under the Federal Rules, McCarthy on Trademarks and Unfair Competition § 26:4 (5th ed.), and

## II. FRAUDULENT TRADEMARK REGISTRATION (COUNT IV)

Plaintiff asserts a cause of action seeking cancellation of Defendant's registration for its "Ardmor" mark on the grounds that Defendant committed fraud in the procurement of the trademark registration. Because the Complaint does not include factual allegations that Defendant knowingly made false material representations, the Court grants the motion.

Fraud in procuring a trademark registration occurs when an applicant "knowingly makes false, material representations of fact in connection with his application." *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1148 (8th Cir. 2011). "Proof that false statements were made to, or that facts were withheld from, the PTO, however, is not enough to show fraud . . . In order to show that an applicant defrauded the PTO[,] the party seeking to invalidate a mark must show that the applicant intended to mislead the PTO." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877–78 (8th Cir. 1994).

When it comes to representations concerning other users of a similar mark, "[a]n applicant is not obligated to investigate and report all other possible users." *WRB, Inc. v. DAMM, LLC*, No. 21-CV-01899 (NEB/TNL), 2022 WL 17844323, at *20 (D. Minn. Dec. 22, 2022) (quoting *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 952 (N.D. Cal. 2015); *see also Rosso & Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983). The *WRB* Court elaborated that, "an applicant must only disclose 'conflicting rights' of another user 'which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration.'" *WRB, Inc.*, 2022 WL 17844323, at *20

---

this affirmative defense is not clearly established on the face of the Complaint because Plaintiff alleges that Defendant's infringement of its trademark was in bad faith.

(quoting *AirWair*, 84 F. Supp. 3d at 952)). Therefore, it is "insufficient to allege only that the trademark applicant was aware of and failed to disclose another party's use of the contested mark." *Id.* (quotation omitted).

In this case, Plaintiff's fraud allegation is premised on Defendant's statement to the USPTO that "no other persons, except . . . concurrent users, have the right to use the mark in commerce, either the identical form or in such near resemblance as to be likely . . . to cause confusion or mistake, or to deceive." (Compl. ¶¶ 45, 95.) Plaintiff generally alleges that, at the time Defendant filed the application, Defendant "knew full well . . . that Plaintiff was already using its ARDMOR Mark for Windows and Doors in multiple states and this had the right to use the Mark in commerce." (*Id.* ¶ 46.) There are no allegations, however, to support the conclusion that Defendant must have been aware of Plaintiff's use of the Ardmor Mark. Not are there specific factual allegations that Plaintiff made the statement in question with the "willful intent to deceive" the USPTO. *WRB, Inc.*, 2022 WL 17844323, at *17 (citing *Aromatique*, 28 F.3d at 877–78).

Because the Complaint does not include sufficient allegations concerning Defendant's knowledge and intent, the Complaint fails to state a claim for fraud in the procurement of the registration. Count IV of the Complaint is dismissed without prejudice.

## III. STATE LAW CLAIMS (COUNTS II, III, and V)

In addition to the federal claims for trademark infringement and trademark registration cancellation, the Complaint asserts three state law claims: Deceptive Trade Practices under the Minnesota Deceptive Trade Practices Act (MDTPA) (Count II), Minn. Stat. § 325D.44; Unjust Enrichment (Count III); and Tortious Interference with

Prospective Economic Advantage (Count V). Because Plaintiff's state law claims mirror its Lanham Act trademark infringement claim, the state claims are dismissed on the merits for the same factual deficiencies in the pleadings. *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 645 F. Supp. 2d 734, 756 (D. Minn. 2009) ("[t]he claims based on the common law and the MDTPA are 'coextensive with the federal claims under the Lanham Act, and, for that reason, the Court analyzes all the claims together, using the same standards'") (*citing DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 n.3 (8th Cir. 2003) (other citations omitted); *LTJ Enterprises, Inc. v. Custom Mktg. Co., LLC*, 168 F. Supp. 3d 1202, 1217 (D. Minn. 2016) (stating that "independent evaluation of [MDTPA and common law unfair competition] is unnecessary because these causes of action are coextensive with the Lanham Act"). The Court therefore dismisses Counts II and III for the same reasons as stated above for Plaintiff's federal claims.

As to Count V, to prove a claim of tortious interference with prospective damage the plaintiff must show, among other things, that a defendant "intentionally interfered with plaintiff's expectation of economic advantage" and that "in the absence of the wrongful act, it is reasonably probable that plaintiff would have realized his economic advantage or benefit." *Gieseke v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014). Here, while Plaintiff pleaded the conclusory statement that "Defendant intentionally interfered with Plaintiff's reasonable expectation of economic advantage," Plaintiff pleaded insufficient facts to support this allegation, particularly as to the question of Defendant's intent. (Compl. ¶ 106.) Further, given the Court's rulings on all other Counts, there is no remaining sufficiently pleaded "wrongful act" that Defendant committed. Finally, as discussed above

Plaintiff has alleged no facts to suggest that it would have "realized" any economic advantage or benefit in Minnesota, Iowa, or Wisconsin in the absence of any wrongful act by Defendant. While Plaintiff states that it has received "inquiries" from the relevant geographic area, Plaintiff has not sufficiently pleaded that it has attempted conducting any business in the relevant graphic area. (*Id.* ¶¶ 5, 20.) Accordingly, the Court dismisses Count V of the Complaint without prejudice.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Dismiss (Doc. No. 18) is hereby GRANTED.
2. This matter is DISMISSED WITHOUT PREJUDICE.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: October 29, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court